**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Joseph Tearne, | ) No. CV 18-206-TUC-LAB |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 14)

The ALJ found that the claimant's drug addiction was material to her determination of disability and denied benefits. The ALJ's decision is supported by substantial evidence and free from legal error. It is affirmed.


PROCEDURAL HISTORY

On January 2, 2015, Tearne constructively filed applications for disability insurance benefits and for supplemental security income pursuant to Title II and Title XVI of the Social Security Act respectively. (Tr. 21) He alleged disability beginning on May 1, 2013, due to anxiety with panic attacks, bipolar disorder with psychosis, depression, ADHD (attention deficit hyperactivity disorder), and memory loss. (Tr. 21, 242-243)

His applications were denied initially and upon reconsideration. (Tr. 122-130); (Tr. 133-139) Tearne requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) MaryAnn Lunderman on September 5, 2017. (Tr. 41) In her decision, dated October 25, 2017, the ALJ found that Tearne was not eligible for benefits because if he stopped his substance abuse, there are jobs he could perform in the national economy. (Tr. 32) Tearne appealed, but on March 22, 2018, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4) Tearne subsequently filed this action appealing that final decision. (Doc. 1)

Claimant's Work History and Medical History

Tearne was born in December of 1976. (Tr. 32) He was 40 years old when the ALJ issued her decision in October of 2017. (Tr. 32, 34) He has a GED. (Tr. 45)

From 2008 to 2011, Tearne worked loading trucks and operating a forklift for his family's salvage business. (Tr. 60-62) After the business failed, Tearne worked odd jobs. (Tr. 46) He worked for Tin Man Recycling and then for Prep and Pastry restaurant. (Tr. 46) Tearne was asked to leave the restaurant when he had an argument with the manager about the advantages of scraping food off the plates before they went into the dish sink. (Tr. 53-54) He asserts that "my disabilities are to the point that they're so severe that . . . if I were to go back to work or any type of stuff like that, it's just going to be a disappointment to me." (Tr. 46)

At the hearing, Tearne reported that, "the last couple months I've been experimenting with marijuana." (Tr. 48) He occasionally uses heroin "just as a social drug or what have you." (Tr. 57) The medical record indicates that Tearne also has a recurring addiction to methamphetamines. (Tr. 425)

Vocational expert Shirley Ripp testified at the hearing that someone with the claimant's age and vocational and educational background with no exertional limitations but limited to "simple tasks learned in 30 days or less or by brief demonstration with minimal change in the task as assigned and requiring less than occasional, seldom or [rare] contact with the public" and requiring at most only "occasional contact with supervisors and coworkers" could not

perform Tearne's past relevant work. (Tr. 58, 62-63) But such a person could work as a salvage laborer, DOT 929.687-022, or a laboratory equipment cleaner, DOT 381.687-022, or a janitor, DOT 381.687-018. (Tr. 58, 62-63)

Counsel asked Ripp about the treating psychiatrist, who opined three years ago that Tearne has "Category IV" limitations, which preclude for 20 percent or more of the day, the activities of "maintaining sufficient [] attention [and] concentration to appropriately complete tasks in a timely manner, complete tasks without extra supervision or assistance, working in coordination with or proximity to others without being distracted, [and] respond[ing] appropriately to changes in a routine work setting." (Tr. 64-65) This psychiatrist further opined that Tearne has "Category III" limitations, which preclude for 15 percent of the time, the activities of "accepting instructions and responding appropriately to criticism from supervisor, interacting appropriately with the general public, and dealing with normal work stress." (Tr. 64-65) Ripp opined that with these limitations, Tearne would be disabled. *Id.*

*Medical Record*

In September of 2015, Michael P. Christiansen, Ph.D., conducted a psychological examination of Tearne for the state disability determination services. (Tr. 410) He performed a face-to-face interview and administered a number of psychological tests. (Tr. 410) Christiansen diagnosed post traumatic stress disorder (PTSD), attention-deficit/hyperactivity disorder (ADHD) and antisocial personality disorder. (Tr. 417) He opined that Tearne is moderately limited in his "ability to maintain concentration and attention, work in coordination or proximity to others without being distracted by them, and complete a normal work schedule without interruptions from anxiety and irritability associated with symptoms of ADHD and PTSD." (Tr. 418) He is moderately limited in his "ability to get along with co-workers, respond appropriately to supervision, maintain socially appropriate behavior, and adhere to basic standards of neatness." (Tr. 418) He is otherwise not significantly limited. (Tr. 418)

In October of 2015, Laura Eckert, Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Tearne's mental impairment. (Tr. 74) Eckert

diagnosed affective disorder and anxiety disorder. (Tr. 72) She then evaluated Tearne's "B" listing criteria, which gauge the severity of his limitations. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Eckert found Tearne has "mild" restrictions of activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. (Tr. 72) Eckert further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of his functional limitations. (Tr. 72-73)

Eckert also completed a mental residual functional capacity assessment. (Tr. 75) She concluded that Tearne's ability to understand and remember detailed instructions is moderately limited. (Tr. 75) His ability to carry out detailed instructions is markedly limited. *Id*. His ability to maintain attention and concentration for extended periods is moderately limited. *Id*. His ability to work in coordination with or in proximity to others without being distracted by them is moderately limited. (Tr. 75) His ability to interact appropriately with the general public is markedly limited. (Tr. 76) His ability to accept instructions and respond appropriately to criticism from supervisor and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes is moderately limited. (Tr. 76)

The medical record also contains a Mental Residual Functional Capacity Form from a medical provider dated March 24, 2017. (Tr. 421) The provider's signature is illegible, but Tearne's counsel identifies the provider as treating physician Steven Herron, M.D. (Tr. 421); (Doc. 17, p. 17) The provider states that Tearne is unable to "maintain sufficient attention and concentration to appropriately complete tasks in a timely manner," "complete tasks without extra supervision or assistance," "work in coordination with or proximity to others without being unduly distracted," or "respond appropriately to changes in a routine work setting" for up to 20 percent of an 8-hour day. (Tr. 421) The provider further opines that Tearne is unable to "accept instructions and respond appropriately to criticism from supervisors," "interact appropriately with the general public," "or deal with normal work stress," for up to 15 percent of an 8-hour day. (Tr. 421)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

1 the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4),
2 416.920(a)(4).

#### The ALJ's Findings

At step one of the disability analysis, the ALJ found Tearne "has not engaged in substantial gainful activity since May 1, 2013, the alleged onset date. . . ." (Tr. 24) At step two, she found Tearne "has the following severe impairments: mental impairments variously diagnosed to include bipolar, mood, anxiety, generalized anxiety, attention-deficit-hyperactivity, post traumatic stress, anti-social personality disorders, and [] substance abuse impairment variously diagnosed to include opiod use disorder, other hallucinogen use disorder, cannabis use disorder, amphetamine type use disorder, and heroin use disorder. . . ." (Tr. 24)

At step three, the ALJ found Tearne's impairments meet section 12.08 found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 24) If Tearne stopped substance abuse, he would still have a severe impairment or combination of impairments, but he no longer would have an impairment or combination of impairments that meets or equals the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 26)

The ALJ then analyzed Tearne's residual functional capacity (RFC). She found that if Tearne stopped his substance abuse he "would have the residual functional capacity to perform the full range of work at all exertional levels but with certain nonexertional limitations." (Tr. 27) "Specifically, assigned work must be limited to simple tasks learned in 30 days or less or by a brief demonstration and the assigned tasks must have no more than minimal change in the tasks as assigned." *Id.* "Additionally, there must be less than occasional (seldom or rare) contact [] with the public and no more than occasional contact with supervisors and coworkers." *Id.*

At step four, the ALJ found that Tearne is unable to perform any past relevant work. (Tr. 32) At step five, the ALJ found, based on the testimony of the vocational expert, that considering his age, education, work experience, and residual functional capacity, Tearne could

1 work as a salvage laborer, laboratory equipment cleaner, or janitor if he stopped his substance
2 abuse. (Tr. 33)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

Discussion: Tearne's alcoholism or drug addiction

- 7 -

Tearne argues first that the ALJ failed to perform an appropriate analysis pursuant to SSR 13-2p, which explains the Commissioner's policies for determining whether "drug addiction and alcoholism" is material to a determination of disability. (Doc. 17, p. 2); SSR 13–2p, 2013 WL 621536.

The social security disability rules disqualify from receiving benefits a person whose drug addiction or alcoholism would "be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); § 1382c(a)(3)(J) "Under the implementing regulations, the ALJ must conduct a drug abuse and alcoholism analysis ('DAA Analysis') by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability." *Id*. "If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Id*. "[T]he claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Id*. at 748.

In this case, the ALJ found that Tearne has severe mental impairments, which result in functional limitations so profound that he is unable to work. These limitations, however, are only partially caused by Tearne's underlying mental impairments. Some of these limitations result from his drug abuse. The ALJ determined that if he stopped using drugs, his remaining limitations would not be disabling. Accordingly, the ALJ found that Tearne's substance abuse would be a contributing factor material to a finding of disability and denied benefits.

The ALJ was able to separate the limitations caused by Tearne's underlying mental impairments from those caused by his drug abuse by comparing the medical records when Tearne was abusing drugs and when he was sober. (Tr. 28-29) The ALJ identified a period of time, from late 2013 to mid 2014, when Tearne was not using drugs. (Tr. 28) During this period, the ALJ observed that Tearne's psychological symptoms were greatly reduced. (Tr. 28-29) (citing Exhibit 5F/3, 6, 7, 8) It appears that she then based her residual functional capacity assessment on Tearne's limitations as displayed during this period and on the limitations

identified by Christiansen who evaluated Tearne during a later period when his psychological symptoms were also reduced. (Tr. 30); *see* (Tr. 410) Using the testimony of the vocational expert, the ALJ concluded that there were jobs in the national economy that Tearne could perform, and he was not disabled. This court finds that the ALJ's drug abuse and alcoholism (DAA) analysis is supported by substantial evidence and free from legal error. *See* SSR 13-2p ("To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA."). More to the point, this court finds that Tearne has not shown that his drug addiction would *not* be a contributing factor material to a finding of disability.

Tearne argues that the ALJ's analysis failed to properly comply with SSR 13-2p, which explains the Commissioner's policies for determining whether "drug addiction and alcoholism" would be material to a determination of disability. (Doc. 17, p. 2); SSR 13–2p, 2013 WL 621536. Specifically, Tearne argues that a finding that DAA is not material is required where "it is not possible to separate the limiting effects of the co-occurring mental disorder from those of DAA." (Doc. 17, p. 11) The court is not convinced that Tearne's reading of SSR 13-2p is correct.

Tearne notes that a Social Security Q&A document stated explicitly that "When it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorder shown by the evidence, a finding of 'not material' would be appropriate." (Doc. 17, p. 9) (citing Q&A document, Answer 29, August 30, 1996) He then asserts that this "Q&A document was later incorporated into and replaced by SSR 13-2p." (Doc. 17, p. 9) Finally, he concludes that this statement is a correct reading of that Ruling. The court is not convinced.

While the Q&A document might have been generally incorporated into SSR 13-2p, this particular statement does not appear in the Ruling. This is fairly strong evidence that the Social Security Administration no longer subscribes to that statement. Moreover, this statement appears to contradict the rule that the *claimant* bears the burden of proving that his DAA is not material. The court, however, need not decide whether Tearne correctly interprets the operation

- 9 -

of SSR 13-2p or not. Assuming he is correct about the construction of the Ruling, his argument still does not carry the day. In this case, it *is* "possible to separate the limiting effects of the co-occurring mental disorder from those of DAA." The ALJ identified a six-month period of sobriety in the medical record during which Tearne's mental symptoms were much reduced. From this information the ALJ was able to differentiate between the limiting effects caused by his underlying mental impairments and those caused by his drug abuse.

Tearne further argues that the ALJ's DAA analysis was flawed. He argues that the period identified by the ALJ of "less than six months" is not enough time for the effects of the methamphetamines to completely wear off. This argument, however, cuts against Tearne. If he is correct, than the reduction of symptoms identified by the ALJ would have been even more pronounced had his period of sobriety lasted longer.

He further argues that during this period of relative sobriety, he still displayed symptoms of being "tense and worried with insight and judgment only fair." (Doc. 17, pp. 13-14) He asserts that "[t]here is no medical evidence that Mr. Tearne's functioning would improve to the point of non-disability in the absence of DAA" and the ALJ's determination to the contrary is "purely speculative." *Id*. This court does not agree.

The medical record supports the ALJ's determination that Tearne's psychotic symptoms were reduced during his period of sobriety. (Tr. 28-29) (citing Exhibit 5F/3, 6, 7, 8) During this period "the claimant was exhibiting good eye contact, normal psychomotor activity (other than occasional jumping legs), unimpaired cognition, spontaneous, clear and fluid speech." (Tr. 28) "While the claimant appeared tense with a worried mood, [he] exhibited a cooperative attitude, and organized goal directed and coherent thought process with no evidence of delusional thinking." (Tr. 28) The ALJ determined, based on the medical record and the consultative examiner's report, that Tearne's functional limitations during this time were reduced to the point that he was able to work. (Tr. 28-30) The ALJ's conclusions are supported by substantial evidence and free from legal error.

Tearne further argues that the ALJ failed to properly consider the cyclical nature of his bipolar disorder. He argues that his period of relatively reduced psychological symptoms could have been due to an episodic reduction of symptoms rather than due to his sobriety.

While it is possible that this period of reduced symptoms was due to the cyclical nature of Tearne's disorder rather than due to his sobriety, it is the ALJ's responsibility and privilege to make this determination in the first instance, and she did so. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630.

Tearne further argues that the ALJ failed to address the "C" criteria of the Listings 12.04, 12.06, 12.08, and 12.15. (Doc. 17, p. 16)

At step three of the disability determination, the ALJ must determine whether the claimant's impairments and limitations qualify for an immediate finding of disability. This determination varies depending on the impairments. For example, for Listing 12.04; depressive, bipolar, and related disorders; a claimant qualifies if he satisfies the "A" and "B" criteria or the "A" and "C" criteria. 20 C.F.R. Pt. 404, Subpt. P, App.1. The "A" criteria describe the symptoms that constitute the particular impairment such as bipolar disorder. *Id*. The "B" and "C" criteria describe the functional limitations that must be present for the claimant to qualify as disabled under the Listing. *Id*. The analysis under the 12.06 Listing, anxiety and obsessive-compulsive disorders, and the 12.15 Listing, trauma- and stressor-related disorders, is similar. *Id*. There is no "C" criteria for Listing 12.08, personality and impulse-control disorders. *Id*.

Tearne argues the ALJ should have considered the "C" criteria, and that if she had, she would have found that he qualified under the Listings even in the absence of substance abuse. (Doc. 17, pp. 16-17) To satisfy the "C" criteria for Listing 12.04, 12.06, and 12.15 "a claimant must show that [his] mental impairment(s) has existed for at least two years, and that (1) [he] relied, on an ongoing basis, upon 'medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [his] mental disorder,' and (2) despite [his] diminished symptoms and signs of [his] mental disorder, [he] has achieved only 'marginal adjustment,' meaning 'minimal capacity to adapt to changes in [his]

environment or to demands that are not already part of [his] daily life.' *Jessica B. v. Comm'r of Soc. Sec.*, 2019 WL 850954, at *5 (E.D. Wash. 2019) (quoting 20 C.F.R. Pt. 404, Subpt. P, App.1).

Tearne asserts in a conclusory fashion that he satisfied the "C" criteria even during the period of lessened symptoms identified by the ALJ. He does not, however, specifically explain why he believes this is true. As the court discussed above, the ALJ determined, based on the medical records, that during his period of sobriety, Tearne's mental symptoms were greatly reduced. Tearne believes to the contrary that his symptoms were only slightly reduced. Presumably, he believes he achieved only "marginal adjustment" during this time. Reasonable minds could differ, but that is not the test. The test is whether the ALJ's evaluation of Tearne's condition is supported by substantial evidence. As the court explained above, it is. *See Orn*, 495 F.3d at 630 ("Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld."). Assuming the ALJ erred by failing to address the "C" criteria directly, Tearne fails to show this error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) ("[T]he burden to show prejudice [is] on the party claiming error by the administrative agency. . . ."); *see also Granados v. Colvin*, 2015 WL 917637, at *4 (E.D. Wash. 2015) (The court will not address an issue that is not "argued with specificity in Plaintiff's opening brief.").

Finally, Tearne argues the ALJ failed to properly credit the opinion of the treating source, Steve Herron, M.D. "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinions are uncontradicted, the ALJ may disregard them only after giving clear and convincing reasons for doing so. *Id*. The ALJ may reject the treating physician's contradicted opinion only if she sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified). In this case, Herron's opinion of disability is contradicted by the medical opinion of the examining consultant, Christiansen. Accordingly,

- 12 -

1  the ALJ's decision to discount Herron's opinion must be supported by "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified).

In this case, the ALJ explained that she gave Herron's opinions "little weight" because, among other things, his opinion was written during a period when Tearne was abusing drugs and therefore his opinion may reflect Tearne's functional limitations at that time rather than during a period of sobriety. (Tr. 30-31) Herron did not support his opinion with references to specific portions of the medical record, so it is unclear what time period this evaluation relates to. (Tr. 421) The court finds this is a specific and legitimate reason for discounting Herron's opinion.

The court notes that it is possible, if not probable, that the opinion is meant to reflect the limitations that Tearne "usually" displayed during the period of time that the treating relationship lasted. Because Tearne "usually" was abusing drugs, this opinion would naturally reflect the limitations resulting from his mental impairments combined with the limitations resulting from his drug abuse. And therefore it is likely that the opinion overestimates the limitations that would be present during a period of sobriety.

The decision of the ALJ is supported by substantial evidence and free from legal error. Accordingly,

IT IS ORDERED that the final decision of the Commissioner is affirmed. The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 29th day of March, 2019.



Leslie A. Bowman
United States Magistrate Judge

- 13 -